IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| K.I.S.S. PHARM LLC, ) | |
|         Plaintiff, ) | |
| v. ) | Case No. |
| ) | |
| BECKER PROFESSIONAL DEVELOPMENT ) | |
|   CORPORATION, ) | **(JURY TRIAL DEMANDED)** |
|         Defendant. ) | |

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT, REPLEVIN, CONVERSION, MISAPPROPRIATION OF CONFIDENTIAL INFORMATION, TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE, FRAUDULENT INDUCEMENT, FRAUDULENT MISREPRESENTAION, UNFAIR COMPETITION, AND BREACH OF CONTRACT**

Plaintiff, K.I.S.S. Pharm LLC, by its attorneys, files this Complaint against Becker Professional Development Corporation, demands a jury, and alleges as follows:

**The Parties, Jurisdiction, and Venue**

1. Plaintiff, K.I.S.S. Pharm LLC ("KISS") is a limited liability corporation organized and existing under the laws of Texas, with its principle place of business located at 2404 North Stonegate Drive, Bedford, Texas 76021-4345.

2. Defendant, Becker Professional Development Corporation ("Becker") is a Delaware corporation having its principal place of business within this judicial district**.** Becker is registered to do business in Illinois with its registered agent for service of process located at 208 South LaSalle Street, Suite 814, Chicago, IL, and the offices of its President and its Secretary both located at 500 W. Monroe Suite 2800, Chicago, IL.

3. This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C.§1331 and 28 U.S.C. §1338(a); original jurisdiction pursuant to 28 U.S.C. §1338(b) and 15 U.S.C. §1121; and, original jurisdiction pursuant to 28 U.S.C. §1332 because the parties are citizens of different States and amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

4. This Court has personal jurisdiction over all parties for the following reasons: (a) Becker regularly does and solicits business, and derives substantial revenue from services provided and products consumed, in the State of Illinois and within this District; (b) during the relevant period of time, Becker maintained an Illinois license for its business activities within Illinois; (c) the offices of the President, and of the Secretary, of Becker are located in Chicago, Illinois and within this District; (d) Becker maintains its corporate headquarters and an additional regular and established place of business in the State of Illinois and within this District; (e) the tortuous acts of Becker, complained of herein, occurred wholly or in part within the State of Illinois and within this District; and (f) Becker expected or should have reasonably expected its tortuous acts to have consequences within the State of Illinois and within this District.

5. Venue is proper in this judicial District under 28 U.S.C. §§1391(b), (c) and (d) because: Becker has its corporate headquarters offices and resides within this District and is subject to personal jurisdiction in this District; a substantial part of the events and actions giving rise to the claims stated occurred in this District; and, a substantial part of property that is the subject of this action is situated within this District.

## BACKGROUND FACTS

6. KISS is a corporation and supplier of educational seminars and related products, promoted and made available both online and through direct marketing primarily to medical and nursing students and recent graduates for use in preparing for licensing board examinations, in the fields of pharmacology, anatomy, biochemistry, biostatistics, neurology, pediatrics, emergency medical service, and nursing. For years prior to the actions complained of herein, KISS was successfully marketing its products and services, nationwide and internationally, generating growing and regular predictable sales – including through its nursing-related products, as well as through sales of its other complimentary and add-on products.

7. In May 2016, KISS' President, Shan Nanji, was approached by Becker's Vice President, David Bartholomew, who indicated Becker's interest in potentially acquiring the rights to market KISS' nursing review seminars and products (its "NCLEX Review Course"), for which KISS was then achieving considerable success and recognition within the community of nursing school graduates and educators. After KISS gave Becker several months access and opportunity to fully review its NCLEX Review Course and related materials, Mr. Bartholomew represented to KISS in October 2016 that Becker had reviewed, become familiar with, and was impressed with the KISS nursing review seminars and products. He further represented that Becker could and would utilize its own established successful online platform, e-commerce system, video program expertise, marketing methods, and contacts within the medical-student and educational community for its GuideMD program materials and related distribution channels - to significantly expand the market for the KISS nursing review materials by modeling GuideMD, with a similar co-brand and complete marketing system named GuideRN, to the nursing student and educational community, related organizations and distribution channels.

8. In exchange for license and access to KISS' nursing review seminars and related products, Becker offered to: promptly, by January 2017, adapt KISS' nursing review program to Becker's existing online platform; promptly and aggressively market GuideRN in the same way Becker markets its GuideMD, directly to consumers and through a high-quality website and online application ("App") and an interactive E-book which Becker would create; and, provide to KISS fifty per cent (50%) of all gross revenues generated from sales related to GuideRN, with real-time accounting to KISS. Mr. Bartholomew continuously and repeatedly assured KISS that Becker's marketing of GuideRN would utilize and provide all of the same marketing methods, techniques and features as its GuideMD, and thus would be similarly successful so long as KISS discontinued its own separate marketing efforts for its NCLEX Review Course in order to avoid conflicts with the marketing efforts of Becker.

9. Becker proposed that KISS provide Becker access to all of KISS' NCLEX Review Course code, open source, videos, user documentation, materials, customer lists, information, maintenance and support upgrades, modifications, and any updates and new releases, all of which items Becker specifically acknowledged and agreed constitute KISS Confidential Information which is the sole and exclusive property of KISS. Following detailed discussions of Becker's proposal, KISS sent to Becker a *K.I.S.S. Pharm, LLC License Agreement* ("License Agreement") to memorialize the parties' intent regarding their respective rights and obligations in further production and marketing of GuideRN program materials to be based upon the NCLEX Review Course materials and PowerPoints which Becker had previously reviewed and approved. Becker's attorneys then substantially modified and drafted a remarkably-one-sided version of the License Agreement, and Becker presented its proposed modified License Agreement to Shan Nanji for his signature on behalf of KISS.

10. After Becker's modified License Agreement was signed by both parties in November 2016, KISS timely met all of its material obligations thereunder, including delivering to Becker all of its copyrighted NCLEX Review Course materials and PowerPoints and new video lectures based upon the PowerPoints which Becker had approved, and coordinating with Becker personnel responsible for adaptations and preparations for the planned rollout of GuideRN on Becker's online platform. Despite those good faith efforts by KISS, Becker unreasonably repeatedly delayed the production and launch of the GuideRN program while demanding that KISS discontinue and refrain from directly marketing its NCLEX Review Course, thus drastically reducing the annual revenues and market penetration which KISS had been enjoying from its nursing review and add-on product sales.

11. Although Mr. Bartholomew continued to repeatedly assure KISS that Becker's marketing of GuideRN would utilize and provide all of the same marketing methods, techniques and features as its GuideMD, that did not occur. When Becker finally did launch a GuideRN program almost a full

4

year later, in September 2017, the presentation quality and marketing efforts and features were woefully deficient in comparison to those of GuideMD which Becker had promised to model. Instead of emulating that same quality and features as promised, Becker's marketing for GuideRN did <u>not</u> include *inter alia* the following important features that were part of the marketing for GuideMD: an online App; an interactive E-book; faculty bios; testimonials; a demo lecture with free subscription for potential customers to evaluate; a well-established quality website. Upon information and belief, Becker intentionally delayed its launch of a woefully-presented GuideRN program in order to reduce and stifle KISS' reputation, market position and upward trajectory - while Becker was simultaneously covertly working on production of its own upscale competing nursing review course, which Becker then brought to market in a much more complete, polished and professional presentation, including all of the marketing features and attributes that were missing from its deficient marketing of GuideRN.

12. Upon information and belief, Becker has based its competing nursing review program in whole or in part upon the KISS NCLEX Review Course and related nursing review program materials, while improperly incorporating therein copyright-protected Intellectual Property and Confidential Information which Becker had acknowledged was the sole and exclusive property of KISS.

**COUNT I**
**<u>COPYRIGHT INFRINGEMENT</u>**
(17 U.S.C. §501 et seq)

13. The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

14. KISS owns valid copyrights for all of its NCLEX Review Course videos, PowerPoints and related materials.

15. By incorporating portions of KISS' copyrighted materials within Becker's own competing nursing review program, Becker has repeatedly infringed KISS' copyrights therein. Becker's acts of infringement were done willfully and with full knowledge of KISS' copyrights.

16. Each product sold by Becker which incorporates any portion of KISS' copyrighted materials constitutes a separate and distinct act of copyright infringement.

17. KISS seeks, pursuant to 17 U.S.C. §502(a), injunctive relief against Becker making any further sales of infringing products.

18. KISS also seeks to recover from Becker, pursuant to 17 U.S.C. §504(a)(1), an award of KISS' actual damages and any additional profits of Becker from its infringing sales.

## COUNT II
## REPLEVIN
(735 ILCS 5/29-101 et seq.)

19. The preceding paragraphs are incorporated by reference as if fully set forth here.

20. KISS is the true and rightful owner, and is entitled to immediate possession, of certain videos, PowerPoint files and slides, and other supporting materials relating to its nursing review program, including all of KISS' NCLEX Review Course code, open source, videos, user documentation, materials, customer lists, information, maintenance and support upgrades, modifications, and any updates and new releases, and all derivative works based upon or incorporating any of the foregoing.

21. On November 28, 2016, Becker signed the License Agreement in which Becker expressly acknowledged and agreed that all of KISS' NCLEX Review Course code, open source, user documentation, materials, information, maintenance and support upgrades, modifications, updates and new releases provided by KISS to Becker are the sole and exclusive property of KISS, and that all right, title and interest to any materials or information provided by KISS to Becker ("KISS Materials") for the new NCLEX Review Course product are and will be the sole and exclusive property of KISS.

22. The License Agreement has been terminated. All of the KISS Materials are still in Becker's possession and are being wrongfully detained. On March 6, 2018, KISS made written demand to Becker for return to KISS of all of its videos and content. The KISS Materials have not been returned.

6

23. KISS Materials have not been taken for any tax, assessment, or fine levied by virtue of any law of this State, against the property of KISS, nor seized under any lawful process against the goods and chattels of KISS subject to such lawful process, nor held by virtue of any order for replevin against KISS.

24. As soon as a hearing can be had therefor, KISS seeks entry of an Order of Replevin for the seizure, by sheriff or other appropriate officer, from Becker of all of the KISS Materials, and the return of same to KISS, pursuant to 735 ILCS 5/19-107 through 109.

## COUNT III
## CONVERSION

25. The preceding paragraphs are incorporated by reference as if fully set forth here.

26. The above-described acts by Becker constitute conversion of the KISS Materials.

27. KISS has suffered great and seeks to recover for its actual, direct and consequential damages and lost profits caused by Becker's conversion and wrongful detention and use of the KISS Materials without permission and in breach of the License Agreement, including that caused by Becker's conversion and wrongful detention use of those KISS Materials protected by copyright and those constituting KISS Confidential Information. KISS also asks that Becker disgorge, and be ordered to pay to KISS, all of Becker's profits from the sales of its competing nursing review course. KISS further seeks punitive damages for the intentional, willful and malicious acts of conversion by Becker.

## COUNT IV
## MISAPPROPRIATION OF CONFIDENTIAL INFORMATION

28. The preceding paragraphs are incorporated by reference as if fully set forth here.

29. Becker has acknowledged and agreed that all KISS Materials are KISS Confidential Information for which all right, title and interest are and will remain the sole and exclusive property of KISS. Becker had also agreed to protect KISS Confidential Information from unauthorized use, dissemination, or publication. Becker did not intend to honor those commitments when made.

30. Becker wrongfully obtained, and has made unauthorized use of, KISS Confidential Information, in producing and marketing Becker's competing nursing review program and related products to the exclusion of KISS, and in causing KISS to refrain from marketing its own nursing review program and related products. In furtherance, Becker requested and obtained access to KISS' confidential customers list, and KISS' confidential listing of contacts within state nursing organizations, ostensibly for use solely to market the GuideRN program - yet Becker has utilized KISS' customer and contact lists without KISS' permission to market Becker's own competing nursing review program and related products.

31. KISS has suffered, and will continue to suffer, great and irreparable harm from Becker's use of its Confidential Information unless sales of Becker's competing nursing review product are enjoined.

32. KISS has also suffered and seeks recovery of actual, direct and consequential damages and lost profits proximately caused by Becker's misappropriation and unauthorized use of KISS Confidential Information and in breach of the License Agreement. KISS also asks that Becker disgorge, and be ordered to pay to KISS, all of Becker's profits from the sales of its competing nursing review course. KISS further seeks punitive damages for the intentional, willful and malicious acts of misappropriation of Becker.

## COUNT V
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE

33. The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

34. While committing the wrongful acts described above, Becker knew and fully intended that KISS would discontinue and lose its existing sales revenues and market share in the nursing student and educational communities and organization related to its KISS NCLEX Review Program and add-on sales. KISS had reasonable expectations that historic levels of sales of its KISS NCLEX Review Program and add-ons would continue through its existing customers and through its contacts within nursing education and organizations. However, Becker demanded and induced KISS to refrain from separately marketing its

8

KISS NCLEX Review Program, while misleading KISS to falsely believe that Becker was actively working in good faith to produce and aggressively promote and market a holistic GuideRN program, with a polished website and complete marketing features, for the mutual benefit of both KISS and Becker.

35. Instead, upon information and belief, Becker intentionally delayed its launch of a woefully-presented GuideRN program in order to reduce and stifle KISS' reputation, market position and upward trajectory - while Becker was simultaneously covertly working on production of its own upscale competing nursing review course, which Becker then brought to market in a comparatively more complete, polished and professional presentation, including all of the marketing features and attributes that were missing from its deficient marketing of GuideRN, and while utilizing KISS' confidential customer and contact lists without KISS' permission. Becker's actions tortuously interfered with KISS' reasonable business and economic expectations, and diverted KISS' expected sales to instead purchase the Becker competing nursing review program.

36. KISS has suffered, and will continue to suffer, great and irreparable harm from Becker's continuing tortious interference unless sales of Becker's competing nursing review product is enjoined.

37. KISS has also suffered and seeks recovery of its actual, direct and consequential damages and lost profits caused by Becker's tortious interference through unauthorized use of KISS Confidential Information and in breach of the License Agreement. KISS also seeks to recover, and asks that Becker disgorge, all of Becker's profits from the sales of its competing nursing review course. KISS further seeks punitive damages for the willful and malicious acts of tortious interference by Becker.

## COUNT VI
## **FRAUDULENT MISREPRESENTATION**

38. The preceding paragraphs are incorporated by reference as if fully set forth here.

39. From October 2016 through and until the License Agreement, David Bartholomew, as Vice President of Becker, made the following false statements of material fact to Shan Nanji and KISS:

a. that Becker had reviewed and was impressed with the KISS NCLEX Review Course;

b. that Becker was interested in obtaining the right to market the KISS NCLEX Review Course for the mutual benefit of Becker and KISS on a shared 50/50 basis;

c. that Becker had the ability and contacts to successfully promote and substantially expand the market for the KISS NCLEX Review Course;

d. that Becker had the personnel and expertise to efficiently adapt the KISS NCLEX Review Course to Becker's existing online platform;

e. that Becker would model its successful GuideMD program, platform, website, features and marketing for the KISS NCLEX Review Course to facilitate its sales growth and market expansion through Becker's existing contacts and distribution channels;

f. that Becker would emulate the GuideMD program marketing by utilizing and including each of the following features:

   (1) a name-change of the KISS NCLEX Review Course to the similar "GuideRN";

   (2) updated video lectures on the Becker platform with content based on the approved KISS PowerPoints;

   (3) dedicated well-established website of the same or higher caliber as that used for GuideMD, utilizing the same or similar e-commerce system;

   (4) an online demo of the GuideRN lectures to encourage potential purchasers to review it and then purchase the GuideRN course;

   (5) online bios of the faculty featured on the GuideRN videotape lectures;

   (6) online testimonials for the GuideRN course and materials;

   (7) an online sample of the GuideRN course products and documentation to encourage potential purchasers to review them and then purchase the GuideRN course;

      (8)    an online application for accessing the GuideRN course on the customers' cell phones or tablets;

      (9)    inclusion of an interactive EBook with purchase of the GuideRN course;

      (10)    distribution of marketing flyers and sell-sheets for GuideRN to each of Becker's existing customers and students at its affiliated educational venues;

g.    that Becker would timely complete preparations of the above features and make them ready and available in a holistic GuideRN product for a full-scale marketing launch in January 2017;

h.    that Becker would in good faith aggressively market the GuideRN course and materials so as to maximize the mutual shared benefits, for both Becker and KISS, of promoting a nursing review program; and

i.    that KISS would have to stop separately marketing its KISS NCLEX Review Course, and automatically re-direct potential customer from KISS' website to Becker's website, in order to avoid competition conflicts and ensure the success of GuideRN.

40.    After the modified License Agreement was signed in November 2016, and continuing thereafter until at least January 2018, Mr. Bartholomew and other Becker personnel continued to make the above-listed false representations of material fact, with the exception of the time-line for completing the features which would emulate the product features and marketing of Becker's GuideRN – instead making excuses regarding Becker's delays after January 2017 in providing the promised features and aggressive marketing for GuideRN, while simultaneously assuring KISS that Becker was in good faith dedicating its personnel to completing and providing the features and marketing efforts as promised.

41.    The above-listed repeated and continuing representations by Mr. Bartholomew and other Becker personnel were false; Becker knew that they were false at the time(s) that they were made to

Shan Nanji and KISS; and, Becker made them to induce KISS' reliance in providing Becker complete access to the KISS Materials and KISS Confidential Information, to induce KISS to assist Becker in updating content of the nursing review course, and to induce KISS to stop marketing its NCLEX Review Course and instead re-direct potential customers to the Becker website – all while Becker was secretly designing and preparing to launch its own competing nursing review program to the exclusion of KISS.

42. KISS did rely upon said false representations to KISS' great detriment and damage. By discontinuing marketing of its NECLEX Review Course and related materials, KISS was damaged in the loss of that ongoing growing revenue stream and marketplace recognition for its products. Further, in reliance upon said false representations, KISS gave Becker complete access to all of KISS' copyright-protected and other course materials and content and related marketing information, and exposed its KISS Confidential Information to Becker, including but not limited to all of KISS' existing and potential customers lists, and KISS' confidential detailed lists of contacts within nursing organizations throughout the country, which upon information and belief Becker has since used in violation of the License Agreement in marketing its nursing review program to the exclusion of KISS and GuideRN. Despite demands for the return of all of the KISS Materials and KISS Confidential Information, Becker has still not returned those items or agreed to refrain from continuing their use.

43. Becker's acts constitute fraudulent misrepresentation, for which KISS is and continues to be irreparably harmed unless Becker's sales of its competing nursing review course are enjoined.

44. KISS is entitled to recover and be awarded its past and continuing actual, direct and consequential damages and lost profits incurred as a result of KISS' reliance upon the truth of the matters falsely asserted by Becker. KISS also seeks to recover, and asks that Becker disgorge, all of Becker's profits from the sales of its competing nursing review course. KISS also seeks an award of punitive damages for Becker's willful and malicious acts of fraudulent misrepresentation.

## COUNT VII
## FRAUDULENT INDUCEMENT

45. The preceding paragraphs are incorporated by reference as if fully set forth here.

46. The above-described acts of fraudulent misrepresentation were made by Becker to induce KISS to enter into the modified License Agreement with Becker.

47. KISS did rely upon said false and fraudulent misrepresentations by agreeing to sign, and actually signing and entering into, the License Agreement, and in acting in good faith to fulfill KISS' obligations under the License Agreement.

48. Due to Becker's fraudulent inducement of KISS to enter into the License Agreement, it should be declared by this Court null and void and of no legal effect, which KISS respectfully requests.

## COUNT VIII
## UNFAIR COMPETITION

(Lanham Act Section 43(a); 15 U.S.C.A. §1125(a); common law)

49. The preceding paragraphs are incorporated by reference as if fully set forth here.

50. By causing Becker's competing nursing review program closely emulate the KISS NCLEX Review Course, and incorporating KISS' copyrighted and confidential materials therein, Becker has infringed KISS' copyrights, falsely misrepresented the quality and source of its competing nursing review program, and deceived and misled potential customers in interstate commerce.

51. Further, Becker requested and obtained access to KISS' confidential customers list, and KISS' confidential listing of contacts within state nursing organizations, ostensibly for use solely to market the GuideRN program, and demanded that KISS discontinue and refrain from separately marketing its KISS NCLEX Review Course to avoid conflicts with the marketing efforts of Becker for GuideRN. Becker led KISS to believe that Becker was actively working in good faith to produce and aggressively promote and market the GuideRN program, with a polished website and complete marketing

features emulating GuideMD, for the mutual benefit of KISS and Becker. Based on that understanding, and Becker's repeated assurances, KISS stopped marketing its KISS NCLEX Review Course. However, upon information and belief, Becker intentionally delayed its launch of a woefully-presented GuideRN program in order to reduce and stifle KISS' reputation, market position and upward trajectory - while Becker was simultaneously covertly working on production of its own upscale competing nursing review course, which Becker then brought to market in a comparably more complete, polished and professional presentation, including the features and attributes that were missing from its deficient marketing of GuideRN, and while utilizing KISS' confidential customer and contact lists without KISS' permission.

52. KISS has suffered, and will continue to suffer, great and irreparable harm from Becker's unfair competition unless sales of Becker's competing nursing review product are enjoined.

53. KISS has also suffered and seeks recovery of its actual, direct and consequential damages and lost profits caused by Becker's unfair competition while making unauthorized use of KISS Confidential Information and in breach of the License Agreement. KISS also seeks to recover, and asks that Becker disgorge, all of Becker's profits from the sales of its competing nursing review course. KISS also seeks punitive damages for Becker's willful and malicious acts of unfair competition.

## COUNT IX
## **BREACH OF CONTRACT**

54. The preceding paragraphs are incorporated by reference as if fully set forth here.

55. If the License Agreement is enforceable at all, then Becker has breached its terms by the acts complained of above.

56. Further, Becker has not accounted to KISS for its share of the gross revenues generated from sales of the GuideRN program, in additional breach of the License Agreement.

57. By Becker delaying preparation and launch of the GuideRN program, by not including all of the significant features of the GuideMD program and marketing presentations, and by

simultaneously and covertly diverting its personnel and resources to develop and bring to market a competing nursing review program to the exclusion of KISS, Becker has failed to use its required commercially reasonable efforts in violation and breach of the License Agreement, and in breach of the covenant of good faith and fair dealing present and a part of every contract.

58. KISS has suffered and seeks recovery of actual, direct and consequential damages and lost profits caused by Becker's breach of the License Agreement and, in particular, through the unauthorized use of KISS' copyright-protected materials and Confidential Information. KISS also seeks to recover, and asks that Becker disgorge, all of Becker's profits from the sales of its competing nursing review course.

**PRAYER FOR RELIEF**

WHEREFORE, KISS seeks judgment against Becker, and the following relief:

a. As soon as a hearing can be had therefor, the entry of an Order of Replevin for the seizure, by sheriff or other appropriate officer, from Becker of all of the KISS Materials, and the return of same to KISS;

b. That Becker be found liable for its copyright infringements, and thus be ordered to pay KISS for all of its actual damages in amounts as proven at trial, and also to account for and disgorge and pay KISS all of its profits generated from the sale of infringing products;

c. That Becker be found liable for its conversion of KISS Materials, and thus be ordered to pay KISS for all of its actual, direct and consequential damages and lost profits caused by Becker's conversion and wrongful detention and use thereof, in amounts as proven at trial, that Becker disgorge all of its profits from the sales of its competing nursing review course, and that punitive damages be awarded to KISS for Becker's intentional, willful and malicious acts of conversion.

d. That Becker be found liable for its misappropriation and use of KISS confidential information, and thus be ordered to pay KISS for all of its actual, direct and consequential damages and lost profits caused by Becker's misappropriation and wrongful use thereof, in amounts as proven at trial, that Becker disgorge all of its profits from the sales of its competing nursing review course making use thereof, and that punitive damages be awarded to KISS for Becker's intentional, willful and malicious acts of misappropriation and use of KISS confidential information.

e. That Becker be found liable for its tortious interference with KISS prospective business advantage, and thus be ordered to pay KISS for all of its actual, direct and consequential damages and lost profits caused thereby, in amounts proven at trial, that Becker disgorge all of its profits from the sales of its competing nursing review course, and that punitive damages be awarded to KISS for Becker's intentional, willful and malicious acts of tortious interference.

f. That Becker be found liable for its fraudulent misrepresentations, and thus be ordered to pay KISS for all of its actual, direct and consequential damages and lost profits caused thereby, in amounts as proven at trial, that Becker disgorge all of its profits from the sales of its competing nursing review course, and that punitive damages be awarded to KISS for Becker's intentional, willful and malicious acts of fraudulent misrepresentation.

g. That Becker be found liable for its fraudulent inducement, and thus that the License Agreement be declared null and void and of no legal effect..

h. That Becker be found liable for its unfair competition, and thus be ordered to pay KISS for all of its actual, direct and consequential damages and lost profits caused thereby, in amounts as proven at trial, that Becker disgorge all of its profits from the sales of its unfairly competing nursing review course, and that punitive damages be awarded to KISS for Becker's intentional, willful and malicious acts of unfair competition.

i. That Becker be found liable for its breaches of the License Agreement, and thus be ordered to pay KISS for all of its actual, direct and consequential damages and lost profits caused thereby, in amounts as proven at trial, that Becker disgorge all of its profits from the sales of its competing nursing review course, and that punitive damages be awarded to KISS for Becker's intentional, willful and malicious acts of conversion.
j. That KISS be awarded its expenses, costs and attorney fees;

k. Such other and further relief, at law or in equity, as the Court finds just and proper.

RESPECTFULLY SUBMITTED,

 /s/ Richard Kirk Cannon
Richard Kirk Cannon
Law Offices of Cannon & Associates
117 S. Cook St., #361
Barrington, IL 60010-4311
TEL: (847) 381-1600
FAX: (847) 381-6650
EMAIL: rkcannon@cannoniplaw.com

*Attorneys for Plaintiff K.I.S.S. Pharm LLC*

## **JURY DEMAND**

Plaintiff K.I.S.S. Pharm LLC hereby demands a trial by jury of any issue triable of right by a jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

RESPECTFULLY SUBMITTED,

/s/ Richard Kirk Cannon
Richard Kirk Cannon
Law Offices of Cannon & Associates
117 S. Cook St., #361
Barrington, IL 60010-4311
TEL: (847) 381-1600
FAX: (847) 381-6650
EMAIL: rkcannon@cannoniplaw.com

*Attorneys for Plaintiff K.I.S.S. Pharm LLC*

## **VERIFICATION BY CERTIFICATION**

Under penalties as provided by law pursuant to § l-109 of the Illinois Code of Civil Procedure, 735 ILCS 5/l-109, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Shan Nanji, President of K.I.S.S. PHARM LLC