## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| K.I.S.S. PHARM LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:18-cv-07848 |
| | ) | |
| BECKER PROFESSIONAL | ) | Judge Andrea R. Wood |
| DEVELOPMENT CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

For its Answer and Affirmative Defenses to Plaintiff, K.I.S.S. Pharm LLC's ("KISS")

Verified Complaint (the "Complaint") Defendant, Becker Professional Development Corporation

("Becker," together with KISS, collectively, the "Parties"), responds as follows to the Complaint.

### I.    THE PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff, K.I.S.S. Pharm LLC ("KISS") is a limited liability corporation organized and existing under the laws of Texas, with its principle place of business located at 2404 North Stonegate Drive, Bedford, Texas 76021-4345.

**ANSWER:**  Becker lacks sufficient knowledge or information to admit or deny the

allegations in this paragraph, and therefore denies those allegations.

2.    Defendant, Becker Professional Development Corporation ("Becker") is a Delaware corporation having its principal place of business within this judicial district.  Becker is registered to do business in Illinois with its registered agent for service of process located at 208 South LaSalle Street, Suite 814, Chicago, IL, and the offices of its President and its Secretary both located at 500 W. Monroe Suite 2800, Chicago, IL.

**ANSWER:**  Becker admits the allegations in this paragraph.

3.    This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C.§1331 and 28 U.S.C. §1338(a); original jurisdiction pursuant to 28 U.S.C. §1338(b) and 15 U.S.C. §1121; and, original jurisdiction pursuant to 28 U.S.C. §1332 because the parties are citizens of

different States and amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Becker denies the allegations in this paragraph.

4.      This Court has personal jurisdiction over all parties for the following reasons: (a) Becker regularly does and solicits business, and derives substantial revenue from services provided and products consumed, in the State of Illinois and within this District; (b) during the relevant period of time, Becker maintained an Illinois license for its business activities within Illinois; (c) the offices of the President, and of the Secretary, of Becker are located in Chicago, Illinois and within this District; (d) Becker maintains its corporate headquarters and an additional regular and established place of business in the State of Illinois and within this District; (e) the tortuous [*sic*] acts of Becker, complained of herein, occurred wholly or in part within the State of Illinois and within this District; and (f) Becker expected or should have reasonably expected its tortuous acts to have consequences within the State of Illinois and within this District.

**ANSWER:** The allegation that "[t]his Court has personal jurisdiction over all parties" is a legal conclusion to which no response is required. To the extent a response is required, Becker denies that allegation. Becker admits that it does business, and derives revenue from services provided in the State of Illinois and within this District. Becker also admits the allegations in subparagraphs 4(b), 4(c), and 4(d). Becker denies the allegations in subparagraphs 4(e) and 4(f), and any remaining allegations in this paragraph.

5.      Venue is proper in this judicial District under 28 U.S.C. §§ 1391(b), (c) and (d) because: Becker has its corporate headquarters offices and resides within this District and is subject to personal jurisdiction in this District; a substantial part of the events and actions giving rise to the claims stated occurred in this District; and, a substantial part of property that is the subject of this action is situated within this District.

**ANSWER:** The allegation that "[v]enue is proper in this judicial District under 28 U.S.C. §§ 1391(b), (c) and (d)" is a legal conclusion to which no response is required. To the extent a response is required, Becker denies that allegation. Becker admits that its corporate headquarters are within this District. Becker denies the remaining allegations in this paragraph.

## II.  BACKGROUND FACTS

6.    KISS is a corporation and supplier of educational seminars and related products, promoted and made available both online and through direct marketing primarily to medical and nursing students and recent graduates for use in preparing for licensing board examinations, in the fields of pharmacology, anatomy, biochemistry, biostatistics, neurology, pediatrics, emergency medical service, and nursing. For years prior to the actions complained of herein, KISS was successfully marketing its products and services, nationwide and internationally, generating growing and regular predictable sales - including through its nursing-related products, as well as through sales of its other complimentary and add-on products.

**ANSWER:**  Becker lacks sufficient knowledge or information to admit or deny the

allegations in this paragraph, and therefore denies those allegations.

7.    In May 2016, KISS' President, Shan Nanji, was approached by Becker's Vice President, David Bartholomew, who indicated Becker's interest in potentially acquiring the rights to market KISS' nursing review seminars and products (its "NCLEX Review Course"), for which KISS was then achieving considerable success and recognition within the community of nursing school graduates and educators. After KISS gave Becker several months access and opportunity to fully review its NCLEX Review Course and related materials, Mr. Bartholomew represented to KISS in October 2016 that Becker had reviewed, become familiar with, and was impressed with the KISS nursing review seminars and products. He further represented that Becker could and would utilize its own established successful online platform, e-commerce system, video program expertise, marketing methods, and contacts within the medical-student and educational community for its GuideMD program materials and related distribution channels – to significantly expand the market for the KISS nursing review materials by modeling GuideMD, with a similar co-brand and complete marketing system named GuideRN, to the nursing student and educational community, related organizations and distribution channels.

**ANSWER:**  Becker admits that KISS' President, Shan Nanji and Becker's former Vice

President, David Bartholomew engaged in discussions about Becker potentially licensing

materials from Plaintiff to use in marketing a course to prepare nursing students for the National

Council Licensure Examination ("NCLEX").  The Parties memorialized their discussions and

agreements into a License Agreement, a true and correct copy of which is attached hereto as

Exhibit A and incorporated herein by reference (hereinafter, the "License Agreement").  Becker

refers the Court to the License Agreement which contains the full, complete, and accurate

description of the agreement between the Parties.  Becker denies the remaining allegations in this

paragraph.

3

8.      In exchange for license and access to KISS' nursing review seminars and related products, Becker offered to: promptly, by January 2017, adapt KISS' nursing review program to Becker's existing online platform; promptly and aggressively market GuideRN in the same way Becker markets its GuideMD, directly to consumers and through a high-quality website and online application ("App") and an interactive E-book which Becker would create; and, provide to KISS fifty per cent (50%) of all gross revenues generated from sales related to GuideRN, with real-time accounting to KISS. Mr. Bartholomew continuously and repeatedly assured KISS that Becker's marketing of GuideRN would utilize and provide all of the same marketing methods, techniques and features as its. GuideMD, and thus would be similarly successful so long as KISS discontinued its own separate marketing efforts for its NCLEX Review Course in order to avoid conflicts with the marketing efforts of Becker.

**ANSWER:**  Becker admits that, as set forth in the License Agreement, that it would "pay KISS a license fee equal to 50% of the gross proceeds from the sale or provision of and the KISS – BPE NCLEX Review Course."  Becker refers the Court to the License Agreement which contains the full, complete, and accurate description of the agreement between the Parties.  Becker denies any allegations in this paragraph that are inconsistent with the terms of the License Agreement.  Becker denies any allegations in this paragraph.

9.      Becker proposed that KISS provide Becker access to all of KISS' NCLEX Review Course code, open source, videos, user documentation, materials, customer lists, information, maintenance and support upgrades, modifications, and any updates and new releases, all of which items Becker specifically acknowledged and agreed constitute KISS Confidential Information which is the sole and exclusive property of KISS. Following detailed discussions of Becker's proposal, KISS sent to Becker a K.I.S.S. Pharm, LLC License Agreement ("License Agreement") to memorialize the parties' intent regarding their respective rights and obligations in further production and marketing of GuideRN program materials to be based upon the NCLEX Review Course materials and PowerPoints which Becker had previously reviewed and approved. Becker's attorneys then substantially modified and drafted a remarkably-one-sided version of the License Agreement, and Becker presented its proposed modified License Agreement to Shan Nanji for his signature on behalf of KISS.

**ANSWER:**  Becker denies the allegations in the first sentence of this paragraph.  Becker admits that the Parties memorialized their agreement in the License Agreement executed on November 23, 2016.  Becker refers the Court to the License Agreement which contains the full, complete, and accurate description of the agreement between the Parties.  Becker denies any

allegations in this paragraph that are inconsistent with the terms of the License Agreement.

Becker denies any remaining allegations in this paragraph.

10.     After Becker's modified License Agreement was signed by both parties in November 2016, KISS timely met all of its material obligations thereunder, including delivering to Becker all of its copyrighted NCLEX Review Course materials and PowerPoints and new video lectures based upon the PowerPoints which Becker had approved, and coordinating with Becker personnel responsible for adaptations and preparations for the planned rollout of GuideRN on Becker's online platform. Despite those good faith efforts by KISS, Becker unreasonably repeatedly delayed the production and launch of the GuideRN program while demanding that KISS discontinue and refrain from directly marketing its NCLEX Review Course, thus drastically reducing the annual revenues and market penetration which KISS had been enjoying from its nursing review and add-on product sales.

**ANSWER:** Becker admits that the License Agreement was executed in November 2016.

Becker also admits that, pursuant to the License Agreement, KISS delivered to Becker certain

materials, PowerPoints and video lectures.     Becker denies Plaintiff's argumentative

characterization of the License Agreement, and denies the remaining allegations in this

paragraph.

11.     Although Mr. Bartholomew continued to repeatedly assure KISS that Becker's marketing of GuideRN would utilize and provide all of the same marketing methods, techniques and features as its GuideMD, that did not occur. When Becker finally did launch a GuideRN program almost a full year later, in September 2017, the presentation quality and marketing efforts and features were woefully deficient in comparison to those of GuideMD which Becker had promised to model. Instead of emulating that same quality and features as promised, Becker's marketing for GuideRN did not include inter alia the following important features that were part of the marketing for GuideMD: an online App; an interactive E-book; faculty bios; testimonials; a demo lecture with free subscription for potential customers to evaluate; a well-established quality website. Upon information and belief, Becker intentionally delayed its launch of a woefully-presented GuideRN program in order to reduce and stifle KISS' reputation, market position and upward trajectory – while Becker was simultaneously covertly working on production of its own upscale competing nursing review course, which Becker then brought to market in a much more complete, polished and professional presentation, including all of the marketing features and attributes that were missing from its deficient marketing of GuideRN.

**ANSWER:** Becker denies the allegations in this paragraph.

12.     Upon information and belief, Becker has based its competing nursing review program in whole or in part upon the KISS NCLEX Review Course and related nursing review program materials, while improperly incorporating therein copyright-protected Intellectual

Property and Confidential Information which Becker had acknowledged was the sole and exclusive property of KISS.

**ANSWER:** Becker denies the allegations in this paragraph.

### III.    COUNT I – COPYRIGHT INFRINGEMENT

13.    The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

**ANSWER:** The preceding answers are incorporated by reference as if fully set forth here.

14.    KISS owns valid copyrights for all of its NCLEX Review Course videos, PowerPoints and related materials.

**ANSWER:** Becker lacks sufficient knowledge or information to admit or deny the allegations in this paragraph, and therefore denies those allegations.

15.    By incorporating portions of KISS' copyrighted materials within Becker's own competing nursing review program, Becker has repeatedly infringed KISS' copyrights therein. Becker's acts of infringement were done willfully and with full knowledge of KISS' copyrights.

**ANSWER:** Becker denies the allegations in this paragraph.

16.    Each product sold by Becker which incorporates any portion of KISS' copyrighted materials constitutes a separate and distinct act of copyright infringement.

**ANSWER:** Becker denies the allegations in this paragraph.

17.    KISS seeks, pursuant to 17 U.S.C. §502(a), injunctive relief against Becker making any further sales of infringing products.

**ANSWER:** Becker admits only that Plaintiff seeks the relief described in this paragraph. Becker denies the remaining allegations in this paragraph.

18.    KISS also seeks to recover from Becker, pursuant to 17 U.S.C. §504(a)(l), an award of KISS' actual damages and any additional profits of Becker from its infringing sales.

**ANSWER:** Becker admits only that Plaintiff seeks the relief described in this paragraph. Becker denies the remaining allegations in this paragraph.

## IV.    COUNT II – REPLEVIN

19.    The preceding paragraphs are incorporated by reference as if fully set forth here.

**ANSWER:**  The preceding answers are incorporated by reference as if fully set forth

here.

20.    KISS is the true and rightful owner, and is entitled to immediate possession, of certain videos, PowerPoint files and slides, and other supporting materials relating to its nursing review program, including all of KISS' NCLEX Review Course code, open source, videos, user documentation, materials, customer lists, information, maintenance and support upgrades, modifications, and any updates and new releases, and all derivative works based upon or incorporating any of the foregoing.

**ANSWER:**  Becker lacks sufficient knowledge or information to admit or deny the

allegations in this paragraph, and therefore denies those allegations.

21.    On November 28, 2016, Becker signed the License Agreement in which Becker expressly acknowledged and agreed that all of KISS' NCLEX Review Course code, open source, user documentation, materials, information, maintenance and support upgrades, modifications, updates and new releases provided by KISS to Becker are the sole and exclusive property of KISS, and that all right, title and interest to any materials or information provided by KISS to Becker ("KISS Materials") for the new NCLEX Review Course product are and will be the sole and exclusive property of KISS.

**ANSWER:**  Becker admits that the License Agreement was executed in November,

2016.  Becker refers the Court to the License Agreement which contains the full, complete, and

accurate description of the agreement between the Parties.  Becker denies any allegations in this

paragraph that are inconsistent with the terms of the License Agreement, and denies Plaintiff's

argumentative characterization of the License Agreement.   Becker denies any remaining

allegations in this paragraph.

22.    The License Agreement has been terminated. All of the KISS Materials are still in Becker's possession and are being wrongfully detained. On March 6, 2018, KISS made written demand to Becker for return to KISS of all of its videos and content. The KISS Materials have not been returned.

**ANSWER:**  Becker admits that Plaintiff made a written request for the return of KISS

Materials on March 6, 2018.  Becker denies that the License Agreement has been terminated in

accordance with the provisions of the License Agreement. Becker denies that the KISS

Materials are in Becker's possession, are being wrongfully detained, or that the KISS Materials

have not been returned to Plaintiff. Becker denies any remaining allegations in this paragraph.

23. KISS Materials have not been taken for any tax, assessment, or fine levied by virtue of any law of this State, against the property of KISS, nor seized under any lawful process against the goods and chattels of KISS subject to such lawful process, nor held by virtue of any order for replevin against KISS.

**ANSWER:** Becker lacks sufficient knowledge or information to admit or deny the

allegations in this paragraph, and therefore denies those allegations. This paragraph also

contains legal conclusions to which no response is required. To the extent a response is required,

Becker denies the allegations in this paragraph.

24. As soon as a hearing can be had therefor, KISS seeks entry of an Order of Replevin for the seizure, by sheriff or other appropriate officer, from Becker of all of the KISS Materials, and the return of same to KISS, pursuant to 735 ILCS 5/19-107 through 109.

**ANSWER:** Becker admits that Plaintiff seeks the relief requested in this paragraph.

Becker denies the remaining allegations in this paragraph.

## V. COUNT III – CONVERSION

25. The preceding paragraphs are incorporated by reference as if fully set forth here.

**ANSWER:** The preceding answers are incorporated by reference as if fully set forth

here.

26. The above-described acts by Becker constitute conversion of the KISS Materials.

**ANSWER:** This paragraph contains legal conclusions to which no response is required.

To the extent a response is required, Becker denies the allegations in this paragraph.

27. KISS has suffered great and seeks to recover for its actual, direct and consequential damages and lost profits caused by Becker's conversion and wrongful detention and use of the KISS Materials without permission and in breach of the License Agreement, including that caused by Becker's conversion and wrongful detention use of those KISS Materials protected by copyright and those constituting KISS Confidential Information. KISS also asks that Becker disgorge, and be ordered to pay to KISS, all of Becker's profits from the

sales of its competing nursing review course. KISS further seeks punitive damages for the intentional, willful and malicious acts of conversion by Becker.

**ANSWER:**  Becker admits that Plaintiff seeks the relief requested in this paragraph.

Becker denies the remaining allegations in this paragraph.

## VI.     COUNT IV – MISAPPROPRIATION OF CONFIDENTIAL INFORMATION

28.     The preceding paragraphs are incorporated by reference as if fully set forth here.

**ANSWER:**  The preceding answers are incorporated by reference as if fully set forth

here.

29.     Becker has acknowledged and agreed that all KISS Materials are KISS Confidential Information for which all right, title and interest are and will remain the sole and exclusive property of KISS. Becker had also agreed to protect KISS Confidential Information from unauthorized use, dissemination, or publication. Becker did not intend to honor those commitments when made.

**ANSWER:**  Becker refers the Court to the License Agreement which contains the full,

complete, and accurate description of the agreement between the Parties.  Becker denies any

allegations in this paragraph that are inconsistent with the terms of the License Agreement.

Becker denies the remaining allegations in this paragraph.

30.     Becker wrongfully obtained, and has made unauthorized use of, KISS Confidential Information, in producing and marketing Becker's competing nursing review program and related products to the exclusion of KISS, and in causing KISS to refrain from marketing its own nursing review program and related products. In furtherance, Becker requested and obtained access to KISS' confidential customers list, and KISS' confidential listing of contacts within state nursing organizations, ostensibly for use solely to market the GuideRN program – yet Becker has utilized KISS' customer and contact lists without KISS' permission to market Becker's own competing nursing review program and related products.

**ANSWER:**  Becker denies the allegations in this paragraph.

31.     KISS has suffered, and will continue to suffer, great and irreparable harm from Becker's use of its Confidential Information unless sales of Becker's competing nursing review product are enjoined.

**ANSWER:**  Becker denies the allegations in this paragraph.

32.     KISS has also suffered and seeks recovery of actual, direct and consequential damages and lost profits proximately caused by Becker's misappropriation and unauthorized use of KISS Confidential Information and in breach of the License Agreement. KISS also asks that Becker disgorge, and be ordered to pay to KISS, all of Becker's profits from the sales of its competing nursing review course. KISS further seeks punitive damages for the intentional, willful and malicious acts of misappropriation of Becker.

**ANSWER:**  Becker admits that Plaintiff seeks the relief requested in this paragraph.

Becker denies the remaining allegations in this paragraph.

VII.   **COUNT V – TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE**

33.     The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

**ANSWER:**  The preceding answers are incorporated by reference as if fully set forth

here.

34.     While committing the wrongful acts described above, Becker knew and fully intended that KISS would discontinue and lose its existing sales revenues and market share in the nursing student and educational communities and organization related to its KISS NCLEX Review Program and add-on sales. KISS had reasonable expectations that historic levels of sales of its KISS NCLEX Review Program and add-ons would continue through its existing customers and through its contacts within nursing education and organizations. However, Becker demanded and induced KISS to refrain from separately marketing its KISS NCLEX Review Program, while misleading KISS to falsely believe that Becker was actively working in good faith to produce and aggressively promote and market a holistic GuideRN program, with a polished website and complete marketing features, for the mutual benefit of both KISS and Becker.

**ANSWER:**  Becker denies the allegations in this paragraph.

35.     Instead, upon information and belief, Becker intentionally delayed its launch of a woefully-presented GuideRN program in order to reduce and stifle KISS' reputation, market position and upward trajectory – while Becker was simultaneously covertly working on production of its own upscale competing nursing review course, which Becker then brought to market in a comparatively more complete, polished and professional presentation, including all of the marketing features and attributes that were missing from its deficient marketing of GuideRN, and while utilizing KISS' confidential customer and contact lists without KISS' permission. Becker's actions tortuously interfered with KISS' reasonable business and economic expectations, and diverted KISS' expected sales to instead purchase the Becker competing nursing review program.

**ANSWER:**  Becker denies the allegations in this paragraph.

36.     KISS has suffered, and will continue to suffer, great and irreparable harm from Becker's continuing tortious interference unless sales of Becker's competing nursing review product is enjoined.

**ANSWER:**  Becker denies the allegations in this paragraph.

37.     KISS has also suffered and seeks recovery of its actual, direct and consequential damages and lost profits caused by Becker's tortious interference through unauthorized use of KISS Confidential Information and in breach of the License Agreement. KISS also seeks to recover, and asks that Becker disgorge, all of Becker's profits from the sales of its competing nursing review course. KISS further seeks punitive damages for the willful and malicious acts of tortious interference by Becker.

**ANSWER:**  Becker admits that Plaintiff seeks the relief requested in this paragraph.

Becker denies the remaining allegations in this paragraph.

## VIII.   COUNT VI – FRAUDULENT MISREPRESENTATION

38.     The preceding paragraphs are incorporated by reference as if fully set forth here.

**ANSWER:**  The preceding answers are incorporated by reference as if fully set forth

here.

39.     From October 2016 through and until the License Agreement, David Bartholomew, as Vice President of Becker, made the following false statements of material fact to Shan Nanji and KISS:

   a.     that Becker had reviewed and was impressed with the KISS NCLEX Review Course;

   b.     that Becker was interested in obtaining the right to market the KISS NCLEX Review Course for the mutual benefit of Becker and KISS on a shared 50/50 basis;

   c.     that Becker had the ability and contacts to successfully promote and substantially expand the market for the KISS NCLEX Review Course;

   d.     that Becker had the personnel and expertise to efficiently adapt the KISS NCLEX Review Course to Becker's existing online platform;

   e.     that Becker would model its successful GuideMD program, platform, website, features and marketing for the KISS NCLEX Review Course to facilitate its sales growth and market expansion through Becker's existing contacts and distribution channels;

11

f. that Becker would emulate the GuideMD program marketing by utilizing and including each of the following features:

(1) a name-change of the KISS NCLEX Review Course to the similar "GuideRN";

(2) updated video lectures on the Becker platform with content based on the approved KISS PowerPoints;

(3) dedicated well-established website of the same or higher caliber as that used for GuideMD, utilizing the same or similar e-commerce system;

(4) an online demo of the GuideRN lectures to encourage potential purchasers to review it and then purchase the GuideRN course;

(5) online bios of the faculty featured on the GuideRN videotape lectures;

(6) online testimonials for the GuideRN course and materials;

(7) an online sample of the GuideRN course products and documentation to encourage potential purchasers to review them and then purchase the GuideRN course;

(8) an online application for accessing the GuideRN course on the customers' cell phones or tablets;

(9) inclusion of an interactive EBook with purchase of the GuideRN course;

(10) distribution of marketing flyers and sell-sheets for GuideRN to each of Becker's existing customers and students at its affiliated educational venues;

g. that Becker would timely complete preparations of the above features and make them ready and available in a holistic GuideRN product for a full-scale marketing launch in January 2017;

h. that Becker would in good faith aggressively market the GuideRN course and materials so as to maximize the mutual shared benefits, for both Becker and KISS, of promoting a nursing review program; and

i. that KISS would have to stop separately marketing its KISS NCLEX Review Course, and automatically re-direct potential customer from KISS' website to Becker's website, in order to avoid competition conflicts and ensure the success of GuideRN.

**ANSWER:** Becker admits that the Parties entered into the License Agreement, and refers the Court to the License Agreement which contains the full, complete, and accurate

12

description of the agreement between the Parties. Becker denies the remaining allegations in this

paragraph.

40.     After the modified License Agreement was signed in November 2016, and continuing thereafter until at least January 2018, Mr. Bartholomew and other Becker personnel continued to make the above-listed false representations of material fact, with the exception of the time-line for completing the features which would emulate the product features and marketing of Becker's GuideRN – instead making excuses regarding Becker's delays after January 2017 in providing the promised features and aggressive marketing for GuideRN, while simultaneously assuring KISS that Becker was in good faith dedicating its personnel to completing and providing the features and marketing efforts as promised.

**ANSWER:**  Becker admits that the License Agreement was executed in November 2016.

Becker denies Plaintiff's argumentative characterization of the License Agreement.   Becker

refers the Court to the License Agreement which contains the full, complete, and accurate

description of the agreement between the Parties.  Becker denies the remaining allegations in this

paragraph.

41.     The above-listed repeated and continuing representations by Mr. Bartholomew and other Becker personnel were false; Becker knew that they were false at the time(s) that they were made to Shan Nanji and KISS; and, Becker made them to induce KISS' reliance in providing Becker complete access to the KISS Materials and KISS Confidential Information, to induce KISS to assist Becker in updating content of the nursing review course, and to induce KISS to stop marketing its NCLEX Review Course and instead re-direct potential customers to the Becker website – all while Becker was secretly designing and preparing to launch its own competing nursing review program to the exclusion of KISS.

**ANSWER:**  Becker denies the allegations in this paragraph.

42.     KISS did rely upon said false representations to KISS' great detriment and damage. By discontinuing marketing of its NECLEX Review Course and related materials, KISS was damaged in the loss of that ongoing growing revenue stream and marketplace recognition for its products. Further, in reliance upon said false representations, KISS gave Becker complete access to all of KISS' copyright-protected and other course materials and content and related marketing information, and exposed its KISS Confidential Information to Becker, including but not limited to all of KISS' existing and potential customers lists, and KISS' confidential detailed lists of contacts within nursing organizations throughout the country, which upon information and belief Becker has since used in violation of the License Agreement in marketing its nursing review program to the exclusion of KISS and GuideRN. Despite demands for the return of all of the KISS Materials and KISS Confidential Information, Becker has still not returned those items or agreed to refrain from continuing their use.

**ANSWER:**  Becker denies the allegations in this paragraph.

43.     Becker's acts constitute fraudulent misrepresentation, for which KISS is and continues to be irreparably harmed unless Becker's sales of its competing nursing review course are enjoined.

**ANSWER:**  This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Becker denies the allegations in this paragraph.  Becker denies any remaining allegations in this paragraph.

44.     KISS is entitled to recover and be awarded its past and continuing actual, direct and consequential damages and lost profits incurred as a result of KISS' reliance upon the truth of the matters falsely asserted by Becker. KISS also seeks to recover, and asks that Becker disgorge, all of Becker's profits from the sales of its competing nursing review course. KISS also seeks an award of punitive damages for Becker's willful and malicious acts of fraudulent misrepresentation.

**ANSWER:**  The first sentence of this paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Becker denies the allegations in this paragraph.  Becker admits that Plaintiff seeks the relief requested in the second sentence of this paragraph.  Becker denies the remaining allegations in this paragraph.

## IX.   COUNT VII – FRAUDULENT INDUCEMENT

45.     The preceding paragraphs are incorporated by reference as if fully set forth here.

**ANSWER:**  The preceding answers are incorporated by reference as if fully set forth here.

46.     The above-described acts of fraudulent misrepresentation were made by Becker to induce KISS to enter into the modified License Agreement with Becker.

**ANSWER:**  Becker denies the allegations in this paragraph.

47.     KISS did rely upon said false and fraudulent misrepresentations by agreeing to sign, and actually signing and entering into, the License Agreement, and in acting in good faith to fulfill KISS' obligations under the License Agreement.

**ANSWER:**  Becker denies the allegations in this paragraph.

48.     Due to Becker's fraudulent inducement of KISS to enter into the License Agreement, it should be declared by this Court null and void and of no legal effect, which KISS respectfully requests.

**ANSWER:**   Becker admits that Plaintiff seeks the relief requested in this paragraph.

Becker denies the remaining allegations in this paragraph.

## X.     COUNT VIII – UNFAIR COMPETITION

49.     The preceding paragraphs are incorporated by reference as if fully set forth here.

**ANSWER:**   The preceding answers are incorporated by reference as if fully set forth

here.

50.     By causing Becker's competing nursing review program closely emulate the KISS NCLEX Review Course, and incorporating KISS' copyrighted and confidential materials therein, Becker has infringed KISS' copyrights, falsely misrepresented the quality and source of its competing nursing review program, and deceived and misled potential customers in interstate commerce.

**ANSWER:**   Becker denies the allegations in this paragraph.

51.     Further, Becker requested and obtained access to KISS' confidential customers list, and KISS' confidential listing of contacts within state nursing organizations, ostensibly for use solely to market the GuideRN program, and demanded that KISS discontinue and refrain from separately marketing its KISS NCLEX Review Course to avoid conflicts with the marketing efforts of Becker for GuideRN. Becker led KISS to believe that Becker was actively working in good faith to produce and aggressively promote and market the GuideRN program, with a polished website and complete marketing features emulating GuideMD, for the mutual benefit of KISS and Becker. Based on that understanding, and Becker's repeated assurances, KISS stopped marketing its KISS NCLEX Review Course. However, upon information and belief, Becker intentionally delayed its launch of a woefully-presented GuideRN program in order to reduce and stifle KISS' reputation, market position and upward trajectory – while Becker was simultaneously covertly working on production of its own upscale competing nursing review course, which Becker then brought to market in a comparably more complete, polished and professional presentation, including the features and attributes that were missing from its deficient marketing of GuideRN, and while utilizing KISS' confidential customer and contact lists without KISS' permission.

**ANSWER:**   Becker lacks sufficient knowledge or information to admit or deny the

allegations that "KISS stopped marketing its KISS NCLEX Review Course," and therefore

denies that allegation.  Becker denies the remaining allegations in this paragraph.

52.     KISS has suffered, and will continue to suffer, great and irreparable harm from Becker's unfair competition unless sales of Becker's competing nursing review product are enjoined.

**ANSWER:**  Becker denies the allegations in this paragraph.

53.     KISS has also suffered and seeks recovery of its actual, direct and consequential damages and lost profits caused by Becker's unfair competition while making unauthorized use of KISS Confidential Information and in breach of the License Agreement. KISS also seeks to recover, and asks that Becker disgorge, all of Becker's profits from the sales of its competing nursing review course. KISS also seeks punitive damages for Becker's willful and malicious acts of unfair competition.

**ANSWER:**  Becker admits that Plaintiff seeks the relief requested in the second sentence

of this paragraph.  Becker denies the remaining allegations in this paragraph.

## XI.    COUNT IX – BREACH OF CONTRACT

54.     The preceding paragraphs are incorporated by reference as if fully set forth here.

**ANSWER:**   The preceding answers are incorporated by reference as if fully set forth

here.

55.     If the License Agreement is enforceable at all, then Becker has breached its terms by the acts complained of above.

**ANSWER:**  Becker admits that the License Agreement is enforceable.  Becker denies

that it has breached the terms of the License Agreement and any remaining allegations in this

paragraph.

56.     Further, Becker has not accounted to KISS for its share of the gross revenues generated from sales of the GuideRN program, in additional breach of the License Agreement.

**ANSWER:**  Becker denies the allegations of this paragraph.

57.     By Becker delaying preparation and launch of the GuideRN program, by not including all of the significant features of the GuideMD program and marketing presentations, and by simultaneously and covertly diverting its personnel and resources to develop and bring to market a competing nursing review program to the exclusion of KISS, Becker has failed to use its required commercially reasonable efforts in violation and breach of the License Agreement, and in breach of the covenant of good faith and fair dealing present and a part of every contract.

**ANSWER:**  Becker denies the allegations in this paragraph.

58.   KISS has suffered and seeks recovery of actual, direct and consequential damages and lost profits caused by Becker's breach of the License Agreement and, in particular, through the unauthorized use of KISS' copyright-protected materials and Confidential Information. KISS also seeks to recover, and asks that Becker disgorge, all of Becker's profits from the sales of its competing nursing review course.

**ANSWER:**  Becker admits that Plaintiff seeks the relief requested in the second sentence of this paragraph.  Becker denies the remaining allegations in this paragraph.

**XII.    PRAYER FOR RELIEF**

Becker denies that Plaintiff is entitled to the relief sought.

*** 

# AFFIRMATIVE DEFENSES

1.      Becker incorporates by reference its answers to Plaintiff's Complaint.

2.      Plaintiff's claims are barred by the terms and conditions of its written agreement with Becker—the License Agreement—which is incorporated herein by reference.  Becker refers the Court to the License Agreement which contains the full, complete, and accurate description of the agreement between the Parties.

3.      Plaintiff's claims are barred because Plaintiff granted to Becker a license to use the KISS Materials.  The License Agreement has not been terminated in accordance with the provisions of the License Agreement.  Thus, any use of KISS Materials by Becker is permitted by the terms of the License Agreement.

4.      Any alleged oral representations to Plaintiff by Becker are either false or otherwise barred by the fully integrated License Agreement.  Becker refers the Court to the License Agreement, including the integration clause contained therein.

5.      Plaintiff's claims are barred because Becker performed all its obligations under the License Agreement.

6.      Plaintiff's claims are barred or reduced due to lack of causation.  Becker refers the Court to the License Agreement, and the "non-exclusive" provisions contained therein.

7.      Plaintiff's claims are barred or reduced due to Plaintiff's anticipatory repudiation of the contract by its impermissible attempt to terminate the License Agreement, without cause or providing Becker time to cure any alleged breach, prior to the expiration of the initial three year period.  (*See,* License Agreement at 6.)

8.      Plaintiff's claims are barred or reduced because Plaintiff failed to properly provide Becker with notice of and an opportunity to cure any alleged breach of the License Agreement.  (*Id.*)

9.      Plaintiff's claims are barred or reduced by the doctrine of accord and satisfaction. Plaintiff's claims are barred or reduced because Becker paid Plaintiff the license fee as provided in the License Agreement.  (*See*, License Agreement at 2.)

10.     Plaintiff's claims are barred or reduced by the doctrine of consent.  Plaintiff agreed to permit Becker to "access, reproduce, distribute [and] use the KISS Materials" in the License Agreement.  (License Agreement at 3.)  Plaintiff further agreed to limit Becker's liability for "damages arising from or related to any breach of any provision of this [License] Agreement."  (License Agreement at 5.)

11.     Plaintiff's claims are barred or reduced by the doctrine of estoppel.

12.     Plaintiff's claims are barred or reduced by the doctrine of detrimental reliance. Becker relied on Plaintiff's statements, set forth in the License Agreement, to Becker's detriment.

13.     Plaintiff's claims are barred or reduced because Becker substantially complied with the License Agreement.

14.     Plaintiff's claims are barred or reduced because Plaintiff failed to satisfy conditions precedent to the License Agreement.  Specifically, Plaintiff failed to "provide Becker with new NCLEX Review Course lectures in .mov or .mp4 format, along with corresponding PowerPoints" that were sufficient for the purpose intended.  (License Agreement at 1.)  Plaintiff further failed "to cover the expenses to create new videos and provide these videos to Becker in .mov/.mp4 format along with corresponding PowerPoints.  (*Id.*)

15.     Plaintiff's claims are barred or reduced because the KISS Materials were actually geared towards helping nursing students matriculate rather than prepare for NCLEX; thus, Plaintiff frustrated the purpose of the License Agreement.

16.     Plaintiff's claims are barred or reduced by the statute of frauds.  Plaintiff's allegations regarding alleged representations or agreements by Becker, exceeding the scope of the License Agreement, have not been reduced to writing and are therefore barred.

17.     Plaintiff's claims are barred or reduced by the doctrines of waiver and release. Plaintiff has waived its claims and released Becker from liability in the License Agreement (License Agreement at 5.)

18.     Plaintiff's claims are barred or reduced by the economic loss doctrine.  Plaintiff seeks solely economic losses and, therefore, cannot bring tort claims for such relief under the economic loss or *Moorman* doctrine.

19.     Plaintiff's claims are barred or reduced by the doctrine of unjust enrichment. Plaintiff has been unjustly enriched by Becker's efforts to improve, finalize, and market the KISS Materials, notwithstanding the fact that they did not serve the purpose for which they were intended.  Moreover, as stated by Plaintiff's counsel at the January 28, 2019 status hearing,

Plaintiff seeks the complete and final material used in the GuideRN course—above and beyond the materials provided by Plaintiff. Any award of such materials would unjustly enrich Plaintiff.

20.     Plaintiff's claims are barred or reduced by the quantum meruit doctrine. To the extent the Court finds the License Agreement unenforceable, Becker has compensated Plaintiff for the actual value of the KISS Materials and Plaintiff has no claim for further relief.

21.     Plaintiff's claims are barred or reduced by the parol evidence rule. The parol evidence rule prevents Plaintiff's attempts to incorporate prior oral agreements that occurred while the License Agreement was being negotiated.

22.     Plaintiff failed to mitigate its damages, if any. Plaintiff was under no obligation to cease its own marketing efforts pertaining to the KISS Materials. Moreover, the KISS Materials provided by Plaintiff do not meet the requirements set forth in the License Agreement. For these, among other, reasons, Plaintiff failed to mitigate its damages, if any.

23.     Becker reserves the right to amend its Affirmative Defenses and add additional affirmative defenses as appropriate.

Dated: February 8, 2019                    Respectfully submitted,

                                           /s/ Terance Gonsalves
                                           Terance A. Gonsalves
                                           Victoria A. Jepson
                                           tgonsalves@steptoe.com
                                           vjepson@steptoe.com
                                           STEPTOE & JOHNSON, LLP
                                           115 S. LaSalle Street, Suite 3100
                                           Chicago, Illinois 60603
                                           (312) 577-1300
                                           Attorneys for Defendant Becker Professional
                                           Development Corporation

# **Exhibit A**

# K.I.S.S. Pharm, LLC

# License Agreement

## With Becker Professional Development Corporation

K.I.S.S. Pharm, LLC, a Texas limited liability company, and Becker
Professional Development Corporation, a Delaware Corporation, enter
into the following Agreement, effective on the last date executed below.

In consideration of the following mutual covenants, the Parties agree as
follows:

## Obligations of KISS

KISS licenses to Becker the right to distribute NCLEX Review Course
("NCLEX Review Course") through Becker's online platform and e-
commerce system. The NCLEX Review Course includes all code
(regardless of type or form), open source, user documentation, materials,
information, and maintenance and support upgrades, modifications,
updates and new releases, provided by KISS, or by a third party on KISS's
behalf, to Becker.

KISS agrees to allow co-branding on the NCLEX Review Course
distributed through Becker's online platform and e-commerce system with
Becker logos and trademarks.

KISS agrees to provide Becker with new NCLEX Review Course lectures in
.mov or .mp4 format, along with corresponding PowerPoints. KISS agrees
to cover the expenses to create new review videos and provide these
videos to Becker in .mov/.mp4 format along with corresponding
PowerPoints.

KISS and Becker agree to jointly select faculty for the new NCLEX Review
Course videos. KISS is solely responsible for the payment of faculty,
including all fees, expenses and compensation to, by or on behalf of any

faculty and, if applicable, the withholding of income taxes and payment and withholding of social security and other payroll taxes, unemployment insurance, workers' compensation insurance payments and disability benefits.

KISS reserves the right to set a minimum price for Becker's sale of NCLEX Review Course to protect against commercially unreasonable prices in regards to the market or to protect against prices that undermine KISS's business strategies.

## Obligations of Becker

Becker agrees to use commercially reasonable efforts to market the NCLEX Review Course product via social media and digital platforms, as well as internally to Chamberlain College of Nursing.

Becker agrees to deliver this content via Becker's online learning platform and sell this product through Becker's e-commerce system. KISS and Becker agree to jointly select faculty for the new NCLEX Review Course videos.

Becker agrees to allow KISS access to real time statistics, including but not limited to: sales, student demographics, and student performance reports.

Becker agrees to send KISS a check for its share of the revenue on a monthly basis, 30 days after course starting start date.

## License Fee

e Becker will pay KISS a license fee equal to 50% of the gross proceeds from the sale or provision of and the KISS – BPE NCLEX Review Course. The license fee shall be for KISS product sales only and will not include any other Becker or 3rd party licensed product.

## Licenses

All right, title, and interest to any materials or information provided by KISS to Becker (KISS Materials) in connection with this Agreement for the

new NCLEX Review Course product are and will remain the sole and exclusive property of KISS. All KISS Materials are KISS Confidential Information. KISS hereby grants to Becker a revocable, non-exclusive, non-transferable, non-sublicensable, royalty-free, worldwide, limited license to access, reproduce, distribute, use the KISS Materials only as required by this Agreement. KISS grants no rights other than as explicitly granted in this Section, and Becker agrees not to exceed the scope of this license.

All right, title, and interest to any materials or information provided by Becker to KISS (Becker Materials) in connection with this Agreement are and will remain the sole and exclusive property of Becker. No Becker Materials will be removed from Becker's premises or servers without Becker's prior written consent. All Becker Materials are Becker Confidential Information. Becker hereby grants to KISS a revocable, non-exclusive, non-transferable, non-sublicensable, royalty-free, worldwide, limited license to access, reproduce, distribute, use the Becker Materials only as required by this Agreement. Becker grants no rights other than as explicitly granted in this Section, and KISS agrees not to exceed the scope of this license.

## Confidential Information.

The Parties agree to protect the Confidential Information of the other from unauthorized use, dissemination, or publication.

## Warranty.

KISS represents and warrants that:

i) it has the right to enter into this Agreement;

ii) it owns or has the right to license the NCLEX Review Course and KISS Materials to Becker;

iii) the NCLEX Review Course and KISS Materials do not and will not infringe or violate any intellectual property right of any third party or breach any contractual obligation;

iv) the NCLEX Review Course will materially conform to the specifications set forth in the user documentation;

v) it will promptly provide all commercially available maintenance and support: upgrades, modifications, updates and new releases (including those with new or additional functionality) to Becker at no charge;

vi) the NCLEX Review Course does not contain any malicious code of any type, regardless of form (including, but not limited to: computer viruses, Trojan horses, worms, spyware, trapdoors and adware); and

vii) the NCLEX Review Course cannot be remotely accessed or remotely deactivated by KISS or any third party on KISS's behalf.

## Indemnification.

KISS hereby agrees to fully and completely defend, indemnify, and hold Becker, its officers, directors, employees, representatives and agents (collectively, the "Becker Indemnified Parties") harmless, from and against, any and all claims, allegations, lawsuits, demands, actions, liabilities, losses, damages, judgments, costs, and expenses (including, but not limited to, attorneys' and expert witnesses' fees) arising out of and/or relating to any alleged infringement, misappropriation, and/or other violation of any alleged or asserted intellectual property rights arising out of and/or relating to the NCLEX Review Course under the Agreement, whether used alone or in combination with any products, or information, as reasonably necessary to enable Becker to use the NCLEX Review Course.

In addition, in the event the NCLEX Review Course is the subject of indemnified claim, allegation, lawsuit, demand, or action, KISS shall, at its sole and exclusive cost and expense: (1) either, at Becker's discretion: (i) obtain a license permitting Becker to continue full use under the terms of this Agreement, or (ii) modify the NCLEX Review Course, without negatively impacting functionality, to make it non-infringing, (iii) replace the NCLEX Review Course with a comparable software product having substantially similar functionality; and, shall (2) retain counsel acceptable to and approved by the Becker Indemnified Parties in writing to defend any such claim, allegation, lawsuit, demand and/or action. KISS will have no authority to settle an indemnity claim, allegation, lawsuit, demand, or action without Becker's written consent.

## Limitation of Liability

EXCEPT FOR DAMAGES ARISING FROM OR RELATED TO ANY BREACH OF ANY PROVISION OF THIS AGREEMENT RELATED TO (I) INTELLECTUAL PROPERTY RIGHTS, (II) CONFIDENTIALITY, AND (III) INDEMNIFICATION OBLIGATIONS, IN NO EVENT WILL EITHER PARTY BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, EXEMPLARY, SPECIAL OR PUNITIVE DAMAGES OF ANY KIND ARISING IN CONNECTION WITH THIS AGREEMENT, WHETHER IN CONTRACT, TORT OR OTHERWISE, EVEN IF THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSS OR DAMAGES, AND EACH PARTY'S AGGREGATE LIABILITY HEREUNDER SHALL BE LIMITED TO: (A) WITH RESPECT TO BECKER, THE TOTAL LICENSE FEE PAID BY BECKER FOR THE SOFTWARE GIVING RISE TO THE DAMAGES; AND (B) WITH RESPECT TO KISS, THE LICENSE FEE DUE AND PAYABLE BY BECKER FOR THE SOFTWARE GIVING RISE TO THE DAMAGE.

THE PARTIES EXPLICITLY AGREE THAT ANY AMOUNT OF MONEY PAID BY BECKER TO ADDRESS, MITIGATE, OR AVOID ANY ADVERSE CONSEQUENCES OF ANY DEFAULT BY KISS UNDER THIS AGREEMENT SHALL ALL BE CONSTRUED AS DIRECT DAMAGES AND NOT AS INDIRECT, CONSEQUENTIAL OR INCIDENTAL DAMAGES.

## Term

The initial term of this Agreement will be for two years from the effective date, unless earlier terminated as permitted in the Agreement. Following the initial term, the Agreement will automatically renew for successive one year terms.

## Termination

After the initial three-year term, either Party may terminate this Agreement at any time and for any reason or for no reason, by giving 90 calendar days' prior written notice to the other Party.

Either Party may terminate this Agreement for cause if the other Party materially breaches the Agreement and fails to correct the breach within thirty (30) days following receipt of written notice.

## Relationship of Parties

Nothing contained in this Agreement will be construed as creating any agency, employment, partnership, joint enterprise or other similar relationship between the Parties. The relationship between the Parties will at all times be that of independent contractors. Neither Party will have authority to contract for or bind the other in any manner whatsoever or to make any representation or commitment on behalf of the other. This Agreement confers no rights upon either Party except those expressly granted herein.

## Entire Agreement

This Agreement represents the entire agreement between the Parties and supersedes all other agreements or representations, whether oral or written.

## Modification of Agreement

Other than the complimentary course requests and the NCLEX expense consents outlined above, this Agreement may not be amended except in writing properly executed by all Parties.

## Notice

All notices required by this Agreement must be in writing and made by personal delivery, U.S. registered or certified mail (return receipt

requested), or nationally recognized courier (e.g., FedEx or UPS) (with delivery confirmation) to the appropriate party at the address listed below or to another address designated in writing by the receiving Party. Notice is effective upon receipt. If a party rejects or refuses to accept notice that fulfills these requirements or if notice is undeliverable because of a change in address without notice of such change to the notifying Party, the notice is effective upon rejection, refusal, or undeliverability.

The Parties' addresses for notice are:

KISS - 7910 NW 25th Street, Doral, FL 33122

Becker- 3005 Highland Parkway, Downers Grove, IL 60515

## Severability

If any provision of this Agreement is determined to be invalid, illegal, or unenforceable, the remaining provisions of this Agreement remain in full force and effect, if the other terms and conditions of the Agreement for both parties remain valid, legal, and enforceable.

## Effect of Waiver

The Parties agree that a waiver by either Party of a breach of this Agreement does not constitute a waiver of any prior or subsequent breach.

## Governing Law and Venue

The laws of the State of Illinois, without regard to conflicts of law provisions, govern all matters arising out of or relating to this Agreement. The parties agree that any claim or dispute they may have against each other must be resolved by a court of appropriate jurisdiction located in DuPage County, Illinois, except as may otherwise be agreed by the parties. The parties agree to submit to the personal jurisdiction of the courts located within DuPage County, Illinois, for the purpose of litigating all such claims or disputes.

## Execution

The Parties have executed this Agreement to be effective on the latest date written below.

_____          11/23/2016 _____

K.I.S.S. Pharm LLC                 Date
By: Shan Nanji, Managing Member

_____          04/24/2017
_____

Becker Professional Development Corporation          Date
By: David Bartholomew, VP - Healthcare

Crafted by WilkersonLegal

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2019, I caused the foregoing to be filed with the Clerk of the Court using the Court's CM/ECF system.  Notice of this filing will be sent to all counsel of record through the Court's CM/ECF system.

Dated: February 8, 2019                    */s/ Terance Gonsalves*